question of sorts I'd like to ask in reading the briefing in this case and the lower court's decision it seems that the decision that was made was a decision on a preliminary injunction and the appeal pertains to the granting or the not granting of the preliminary injunction and the preliminary injunction seemed to be somewhat limited to the upcoming school year which is now almost done. Why is the appeal that we're dealing with today not moved? Thank you your honor. May it please the court I am Jess Askey for the appellants. It's not moved because we asked that the that first of all that Blytheville School District rescind its opt-out from the 2013 Act, notify the neighboring district so that they could decide whether to accept or not the applications of my clients and enroll and permit my clients to enroll. Having that relief vests in them the continued ability to stay in that district and that's why it's if we can get a ruling between now and soon. What do you mean stay in that district? Stay in the transferee district. Are they in the mean when you say stay in the transfer? Under the 2013 Act once a student transfers into a district a transferee district that student may stay there for the rest of his or her educational career. So that's the relief if we can get the relief this year and affect the transfer this year then we can then my clients will have that right continuously. Can you do that statutorily though? Doesn't the decision have to be made by August 1? The decision has to be made by August 1 as to this school year. I think that this circumstance we would ask for judicial relief to override that statutory deadline because we believe that the school district violated the statute from the very beginning and that my clients should have been able to. So the relief you want is an injunction that orders the Blytheville district to allow you or to eliminate the opt-out but then you want some other relief on top of that that would require the transferee districts to consider an application at this later date is that? We're not asking for that relief. That would follow as a matter of course I submit your honor. If someone wanted to say that could not be done now because the August 1 deadline has passed I would cross that bridge and that's not where we were when we had the preliminary injunction hearing and so and it's not that's not an angle of mootness that I had anticipated your honor and I would not be asking for this relief today. Does it make any difference that the preliminary injunction you requested even with respect to the rescission of the resolution just says for the upcoming 2013-2014 pending determination? I don't think it does because time has moved forward and the intent really your honor is to allow the transfer of these children for the remaining educational period that they have. For the rest of their school years. That is certainly what the what the motion for preliminary injunction said we anticipated that we would have an up or down answer and be able to to process the applications. So if I understand you you're saying even though potentially this court may not have an answer to your question before the ending of the current school year you're saying relief would still be meaningful because if granted for the school year that's passed that it has effect on future school years. Absolutely and this is a parents involved case and we need to have a recognition and a ruling on that issue. We've been in July of last year that was the precursor lawsuit that came from Malvern. This 2013 act was the reason why the Teague appeal was mooted. I tried to avoid the mootness unsuccessfully in the Teague appeal. We now have this case which the district court recognized is part of the history of Teague. Once again we have the school district says you may not transfer children because we opt out to keep white children from transferring. That's what this case is and we need to have an answer both for the future of this case and for the immediate needs and use of my clients. So what do you cite for authority that there remains a viable remedy beyond this school year? What what what would we look to in this record to to be able to make that determination? With respect to the preliminary injunction as requested for the 13-14 school year I'm not sure I can provide that for the overall guidance of this litigation. Absolutely that's what this litigation turns on. That's where we are. That's what the issue is and we need to have an answer to that as soon as possible. If we don't have an answer to that then my remedy is to go back have a trial on the merits. The statute itself is assumed since it was a preliminary injunction request this case is still alive below. Yes. And has it been set for trial? No. We don't have a scheduling order and I have not pressed for one because I wanted to get this appeal decided because it really is the most important. The legal issues are here. Now the act is still in effect so that a person could apply next year? But it expires at the end of June 2015. So I don't think I could have a trial and get in under the bill your honor. I see but you're saying if you get in during these two years you're the children are good for the rest of their time that's why you say it's still live. Yes your honor. And how would it work how would the transferee district make a decision after the school year is over? How do you? Well it would have to make a decision in the regular course under the statute do we or do we not have room for these children does this make sense for us do we wish to accept? It would be sort of a hypothetical decision if this had been presented to us before 2013 school year we would have granted admission or? I would submit that they could make that decision now and if Blytheville wanted to challenge it yeah we could have an appeal to the Board of Education. That decision by the transferee district would give rise to an administrative appeal to the Board of Education. What Blytheville has done has ended the process and has destroyed any ability of my clients to transfer. We have a parents involved case because even if Blytheville had been able to opt out on under the statute it's still asserted as its reasons race and it defends this case on the basis of race this resegregation white flight. Have they ever offered any other reason? The Franklin lawsuit which was about desegregation. You mean the subject to the order? Yes yes that's all we have and but what's your constitutional claim? It's an equal protection. We have an equal protection claim. We have a procedural due process claim because my clients have the entitlement under the statute to have a school district participate in school choice unless the school district opts out under the terms of the statute which means before April 1 and because it is subject to a theory that you have evidence of race discrimination or is it that there's no rational basis? Race discrimination and it's we what if they claim we thought we were subject to the Franklin order. That's what they have claimed. Well that wouldn't be would that be race discrimination or would that just be wrong as a It would be race discrimination because the defense of this case the testimony at the hearing was we made this decision at Blythville to avoid resegregation and of course the resegregation claim makes no sense because Franklin itself was about intra district segregation with a dual school system operating within Blythville. The resegregation and white flight that has prompted this action by the board has to do with children transferring from Blythville to other districts which is the Millican versus Bradley issue which was never an issue in Franklin to begin with. But what prompted them to do this was the belief that they had to stop white flight and there's another comparator your honor Judge Colleton which was the KIPP school in Blythville which is more predominantly black than the Blythville school district and there is it's a open enrollment public charter school and there's a process and a statute in Arkansas that requires the Blythville district to review the open enrollment charter application and speak up if it would impair the desegregation efforts of a school district of it as a school district. That KIPP school is within the Blythville school district. It has a higher concentration of black students than the Blythville school district and Blythville never said oh by the way this Franklin case from 35 years ago compels us to step forward and say we have desegregation remedies that remain to be completed. Now in the Franklin case Judge Eiseley retained jurisdiction for a period of time is that right? Five years. So during that five years anybody could have returned to the court with a complaint about compliance with the order but you say once that was case was dismissed there's no ability for the district court to enforce that order now? The case was closed in 1973 dismissed not appealed in 1978 the case was over. If someone had new facts someone could file a new lawsuit. Mr. Eskew, you're in your rebuttal. You can continue. I would like to reserve my time and if it would help on this issue of mootness which I had not anticipated and I apologize I'd be certainly happy to submit briefing. I Thank you, Mr. Eskew. Mr. Bickett. Thank you. May it please the court. The district's position is that the trial court correctly denied the injunction because there was simply a failure of proof offered by the well-settled prongs that justify an award. Counselor, could you speak up just a little bit? Might want to raise your podium there a little bit. What do you say on likelihood of success on the equal protection claim? What is the rational basis for the opt-out? Well the rational basis is simply that the district testified that it believed that it had the right to opt out based on the way the statute was written and the existence of not only the Franklin desegregation lawsuit but the Department of Justice and the House Department of House Education and Welfare mandates agency mandates that came down that prohibited the district from going you know from continuing with this freedom of choice plan and the superintendent and the board felt like this the way the school choice law was drafted the district had the right to exercise that exemption and opt out because if to not opt out would result in the district going back to the old 1960s era for your freedom of choice plan and you know I think the trial court correctly recognized that you know you know when a similar choice or transfer school transfer for statute at 3762 in 1987 came before this court back you know some years ago Edgerson v. Clinton in 1996 this court found that you know the district's you know blocking a school choice transfer under that statute didn't implicate equal protection laws and there's just no there's no evidence that that there was anything irrational or arbitrary or capricious about what the district did the board did. Well I thought they said we are exempt because we're subject to the order in the Franklin case. It was both and based on the you defended on that basis do you defend the board's action on the basis that the district was subject to the order in the Franklin case? Subject to the order in the Franklin case and the statute also covers agency mandates which the district is also subject to. I know but I want to take them one at a time yes I understand your argument. Yes the district was subject to the order in the Franklin case when the case was dismissed in 1978. It was dismissed but there were orders entered by the court that the district believed it's still subject to. The orders are still in effect although the case has been dismissed? Yes that's correct. What was the purpose of the dismissal then because as I understand it Judge Isley retained jurisdiction for five years under which he could enforce the order but then five years later dismissed the case. He dismissed the case because there was no further action to take but to the to the district that didn't mean that those orders did not remain in effect such that the district couldn't go back to this freedom of choice student assignment plan that brought about you know the lawsuit in the first place and also brought about you know the Department of Justice and the Department of Justice. So the district believes that the trial court's ruling on the preliminary injunction was correct. First off because there was a low probability or likelihood of success on the merits. We've talked about the equal protection claim. Let me I was thinking about your answer. Do you have any authority that lives on in perpetuity once a district court dismisses the action in which the order was entered? I think that's your position. You're saying the 1973 order continues in perpetuity and the district is subject to that order for all time. That's not what I'm saying. Well okay when does it end? Well it doesn't end when the case is dismissed. What the district is saying is that you know the way that school choice act of 2013 is written, the district is subject to those to the Franklin case and the agency mandates and therefore qualifies for the exemption under that statute. We don't have to analyze you know things such as how long the jurisdiction of the court if we are subject to that order or to that case. What does that mean to be subject to the order? Well the district believes it means that it qualifies the district for the exemption under the school choice act of 2013. You haven't really explained what kind of order is required for a district to be subject to the order. That's what I'm trying to get at. Right and I understand but you're just saying the district decided that it was subject to the order and it that's circular it doesn't explain why they're dismissed unless it is that the order continues in perpetuity which is what I thought you were saying. Well you said no that's not your position. The district's position is that because of those cases and agency mandates it's not it's subject to the desegregation order and mandates and therefore has the right to declare the exemption. The district believes it's still subject to those orders and mandates because to go back to a freedom of choice system which the 1960s era that was you know the subject or the reason why there were agency mandates in a Franklin lawsuit filed against the district for the district to go back to that would violate the Franklin case in the agency mandates and simply the mandates would be. That was an intra-district matter. It was it was and this is it's not it's they're different but I think the the analysis and the conclusion and the results are the same. And you know we also believe that the lower court got it right on the due process claims which are the other claims. We start with the premise that you know 1983 actions really aren't meant for this kind of a case where the case is simply about a violation of a state law. Well I had one more question. Yes. Is your counterpart right that the articulated reason was to for the opt-out was to prevent white children from leaving the district? No that's that's incorrect. What about this white flight argument that he's raised? Well the operative reason was to avoid the district returning to a freedom of choice plan which exposed the district to all of the litigation back in the seventies in the Franklin case in the agency mandates. That freedom of choice plan is what got the district in trouble back in those days. You know to not opt out based upon the district's involvement in the DSEG case in the agency mandates back in the late sixties and early seventies. That's what allowed the district to claim the exemption. That's presumably why the exemption was included in the 2013 act and that's why the district exercised its right to opt out and declare the exemption under the 2013 act. Ok thank you. You can go on to your due process argument. I just wanted to hear you out on that. Yes sir. Well I just on substance of due process you know the trial court got that correct because those I mean substance of due process really doesn't apply here. There's nothing about the district's actions that were outrageous or shocked the conscience and substance of due process typically applies only to marriage, procreation, bodily integrity. With respect to the procedural due process claim, again plaintiffs offered no evidence as to what process they were they were due or that plaintiffs offered no evidence that they made some request that the school board rescind its action. Arkansas law has procedures whereby districts that call special meetings like this have to notify the news media. There's no specific requirement that the district notify any others for a special board meeting but there is a procedure that plaintiffs could have but did not avail themselves of under Arkansas state law for the plaintiffs to call for a special board meeting for the school district board to reconsider and act on plaintiffs request that the district rescind its exercise of the exemption. The bottom line under the due process claims is that the plaintiffs seem to assert a notion that the district court properly rejected that there's some fundamental right to exercise school choice in Arkansas or pursuant to this statute and that's just simply not correct. I mean that's an argument that that creates something new that's not in our constitutional jurisprudence. There's nothing conscience shocking. There's no evidence that the that this board intended to treat these plaintiffs differently. There's no action or no evidence that the board's action here was on the exemption was irrational or particularly arbitrary. You know the district took this action fairly early on less than two weeks after the the statute was signed into law by Governor Beebe. There were just a handful of exemptions or exemption requests or choice request applications that have been filed by parents at that time. The district took this action at an early stage very quickly after the law was passed. The community would know and in the district would know that there would be you know that no one in the district would have the option to you know to apply for a transfer under the 2013 Act. And then lastly the court was correct in denying the request for preliminary injunction based on the their failure to establish irreparable harm. The plaintiffs tended to focus on whether they had an adequate remedy at law but really the the first standard and the court correctly noted below that is looked at is that the the harm must be certain or great. Plaintiffs took issue with the fact that the way the the trial court phrased this was that the injuries had to be unique. I think what the court below is simply saying was that the harm had to be certain or great and that every parent or most every parent has concerns about their children. I think the court recognized that that's not a particularly unique or incredible or certain or great harm because if these students stayed in the Blytheville district they would receive a fine education. It wasn't like in the other cases the Pierce case and the Brown v. Board of Education case cited by plaintiffs or appellants in their briefs. You know those cases injunctions were private school option was totally out the window because of the state statute and then obviously Brown v. Board of Education. Here this this case is different. Plaintiffs just articulated a generalized concern about their kids education that in fact might be present in the district that the parents transferred their children to under the 2013 act if they had been allowed that option. At bottom there was simply a lack of evidence presented to the trial court in order for the trial court to enter a preliminary injunction. The defendant and the appellee Blytheville School District would ask that this court affirm the trial court's ruling on that. You heard some of the questions early on about mootness. Do you have any thoughts on that? I do. I think the case probably is moot and I'll agree with Mr. Askew and I apologize. I didn't anticipate it. I'd written it on my notes last night because we thought about it. We didn't brief it but you know if you look at the way the case is handled right now it probably is moot. But as Mr. Askew said he's correct under that statute once a student choices out or is allowed the choice out they're allowed to finish their education at the transferee school. So that would that would be an argument mitigating against the mootness issue but the way the pleadings stand now based on the current complaint and the request for injunctive relief for the 2013-2014 school year it is moot. Has the school district opted out for the 14-15? It has. It just recently did that. Yes sir. I stand available for further questions if not we ask that the court affirm. Thank you. I guess I do have one more question. Yes sir. I want to ask Mr. Askew this too but since you have a minute left. Sure. Is there any avenue by which these students could seek relief in the state system in Arkansas if they think that the Blytheville District has misapplied the statute? Yes. What would that be? How could they do it? Well they could simply file a lawsuit against the district and state court alleging that we violated the statute. You know statutory violation case which. You mean under like the State Administrative Procedure Act or what? Well just a violation of state statute. Just sue the district based on a violation of state statute. That's what we we argued against the district court having jurisdiction of this case at the beginning because essentially this case isn't about federal rights. It's about you know a violation of the state statute. And so the court would violate. The court they could get it to state court. The appellants could get this case to state court in one of two ways. One would be to file a complaint state court alleging that the district's violating the statute and get declaratory relief, injunctive relief, or if they have a damages claim there. Or the district or the or the appellants could do what parents in the Forest City School District did and bring it bring an appeal to the Arkansas Department of Education, the State Board of Education. And and then if the state board denied the request for choice at the state board level then the Administrative Procedures Act would apply and there would be a right to appeal the circuit court based on the state board's denial of the parents appeal to choice out of the district. So there are two ways to get at it. Can they appeal a decision of an opt-out or can they only appeal the decision of a transferee district to reject their application? Well it's it's not totally clear whether or not a decision district decision to declare the exemption could be appealed but it does seem to be clear that a district or that a student and their parents could appeal a district's decision, a transferee district or a potential transferees district to deny the application. Yeah, but they don't even apply here as I understand it. They don't even apply to a transferee district because of this opt-out. I disagree with that. That's what in the Forest City situation what happened there was those parents applied and the potential transferee district declined or denied the that the other district had opted out? Correct. I see. Same thing that happened here it's just a matter of presenting the state board's going to hear the case. What happened in the Forest City case? The state board denied the request for the parents for the student to be able to choice into the other district and I don't know what the status of the of the APA, the Administrative Procedures Act appeal is. Thank you. Yes sir. Thank you Mr. Beck. Thank you all. Mr. Eskew. Thank you your honor may it please the this lawsuit in state court I think that's what the school district just told you Judge Colleton and this law then you'd have state law you could say that the state law doesn't authorize the opt-out whereas here you're limited to trying to make it into a federal question right and I could also bring the 1983 claim in state court yeah but I would have a state law judge trying to figure out how what do I do with Franklin and here we have a federal court who can is on is on the same footing as the Franklin case. My view of the matter is that the state board denied the appeals in the Forest City case because they didn't want to mess around with a federal desegregation case. State authorities in Arkansas are scared to death of federal desegregation cases. They won't touch them and that's why we chose federal court in this declaration we've asked for a declaration and we've brought a claim under the Arkansas Civil Rights Act as under supplemental jurisdiction in this case. What did the district court do with that one? We did not ask for a preliminary injunction based on those either Blytheville School District is subject to Franklin here in 2013-14 in which case the KIPP situation couldn't exist or it is not in which case this opt-out can't exist. Blytheville can't have it both ways and it wants to have it both ways. There is there is law on how long desegregation decrees last. It's cases like Freeman versus Pitts. It's cases like Kansas City, like Little Rock. This court has as much experience as any court in the country on desegregation cases and knows exactly what they involve. Judge Isley did these things by the bucket full in 1970 and 71. This court had to assign a special judge to come down and help with the desegregation. It cannot be a case to which Blytheville is subject. That's outrageous, abusive use of state power against my plaintiffs. My plaintiffs were the people who had sought to transfer and filed their applications before this no-notice meeting except to the media when Blytheville opted out. We do ask for an opinion from this court. This is a, I just can't imagine, a more compelling case for preliminary injunctive relief. The trial judge just was blind to this question of parents involved even though the trial judge admitted and said in JA 330 this case is a follow-on of the Teague lawsuit. This court is mindful of the history and cited Teague which was all about parents involved. So I've used up my time. We appreciate the court's attention and hearing. Thank you Mr. Askew and the court thanks you also Mr. Beckett. We appreciate your argument and briefing in the case. We'll take it under advisement and render decisions prompt as possible. Madam clerk does that complete